

**FILED**
**Jul 09, 2024**
**03:32 PM(CT)**
**TENNESSEE**
**WORKERS' COMPENSATION**
**APPEALS BOARD**



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## WORKERS' COMPENSATION APPEALS BOARD

| | | |
|---|---|---|
| Theralease Ridley | ) | Docket No. 2022-01-0478 |
| | ) | |
| v. | ) | State File No. 47802-2021 |
| | ) | |
| Mature Care of Standifer Place, LLC, et al. | ) | |
| | ) | |
| | ) | |
| Appeal from the Court of Workers' | ) | Heard June 13, 2024, |
| Compensation Claims | ) | in Murfreesboro, TN |
| Audrey A. Headrick, Judge | ) | |

---

### Reversed in Part, Modified in Part, and Remanded

---

In this interlocutory appeal, the employer argues the trial court erred in awarding the employee a panel of pain management specialists in her new locale. The employee, a certified nursing assistant, reported an injury after lifting a patient at work. The authorized physician initially stated the employee's condition was primarily related to the reported incident and provided conservative care. Following further diagnostic testing, however, the physician revised his opinion, stating the employee's back condition was primarily related to a pre-existing, degenerative condition and that she had received all necessary treatment related to the reported work injury. The employee obtained an evaluation from another physician, who stated the work accident was the primary cause of several disc herniations and recommended pain management treatment. The employee moved to another state and requested a panel of specialists, which the employer denied. At an expedited hearing, the trial court found that the treating physician's opinion was inconsistent, determined the causation opinion of the employee's expert rebutted the statutory presumption of correctness afforded the opinion of the authorized physician, and ordered the employer to provide a panel of pain management providers near the employee's new residence. The employer has appealed. Upon careful consideration of the record and the arguments of counsel, we reverse the trial court's determination that the employee's expert rebutted the causation opinion of the panel-selected physician, affirm as modified the order for the employer to provide a new panel, and remand the case.

Judge Meredith B. Weaver delivered the opinion of the Appeals Board in which Presiding Judge Timothy W. Conner and Judge Pele I. Godkin joined.

Connor R. Sestak, Nashville, Tennessee, for the employer-appellant, Mature Care of Standifer Place, LLC

Michael A. Wagner, Chattanooga, Tennessee, for the appellee, Theralease Ridley

**Factual and Procedural Background**

Theralease Ridley ("Employee") was working for Mature Care of Standifer Place, LLC ("Employer"), as a certified nursing assistant when she reported pain in her back beginning on May 22, 2021. She initially obtained medical treatment on her own at Parkridge Medical Center on May 24, 2021, and, at that visit, she reported a "gradual onset of symptoms" after lifting heavy patients the week prior. Employee continued to seek medical care at Parkridge Medical Center on her own before reporting the injury to Employer on June 11, 2021. When describing the alleged injury, Employee stated that the morning after she worked on May 22, she woke up "in a lot of pain" in her back, which she attributed to lifting a heavy patient the day before. Employer's first report of injury form does not describe a specific mechanism of injury, but Employee later testified she experienced pain when moving a 400-pound patient on May 22, 2021.

After Employee gave notice of the alleged incident, Employer provided a panel of physicians, from which Employee selected Dr. Donald F. Langenbeck, a physical medicine specialist.[1] Employee first saw Dr. Langenbeck on July 29, 2021, at which time he diagnosed a lumbar disc protrusion and lumbar radiculitis based on her history, x-rays, and his examination, and he prescribed physical therapy. Following that initial visit, the insurance carrier for Employer sent correspondence to Dr. Langenbeck asking if Employee's employment contributed more than fifty percent to her "injury/complaints" considering all causes. Dr. Langenbeck responded in the affirmative and also wrote Employee "stated that she did not have the pain prior to the work injury."

Employee returned to Dr. Langenbeck's office on September 2, 2021, complaining that physical therapy had made her low back pain worse and that she had returned to the emergency room a few weeks prior. A physician's assistant in Dr. Langenbeck's office ordered a lumbar MRI and prescribed a lidocaine patch and ketorolac, a non-steroidal anti-inflammatory drug. The MRI was completed on September 10 and showed bulges at all disc spaces from L3 to S1. An EMG conducted in January 2022 indicated right L4-L5-S1 radiculopathy. Finally, a January 26, 2022 myelogram with contrast showed degenerative disc disease with spondylolisthesis, multilevel facet hypertrophy, and partially calcified extruded discs "at the lower [three] lumbar levels." On March 10, 2022, after several steroid injections failed to relieve Employee's pain, Dr. Langenbeck referred her to his partner, Dr. Lee Kelley, for a surgical consult and indicated she could return to him "as needed." For reasons unclear in the record, Employee saw Dr. Daniel Silcox, another surgeon in Dr. Langenbeck's practice, rather than Dr. Kelley. Dr. Silcox noted early grade

---

[1] The panel is not contained in the technical record; thus, we do not know the specialty, if any, of the other doctors on the panel. Neither party disputes that the panel complied with Tennessee Code Annotated section 50-6-204(a)(3)(A)(i) (2023).

spondylolisthesis due to degenerative changes at L4-L5, facet arthropathy, and preexisting calcified disc bulges at L3-L4, L4-L5, and L5-S1. He informed Employee she had "significant pre-existing degenerative changes in her spine which were most likely aggravated by her work injury." He did not recommend surgery, although he suggested a radiofrequency ablation of the L4-L5 and L5-S1 facet joints might be indicated.

On May 9, 2022, Dr. Langenbeck responded to another letter from Employer's counsel regarding the cause of Employee's condition and revised his opinion, stating that the pathology on the CT myelogram of January 2022 pre-existed the May 2021 injury and that Employee's condition was not primarily related to the lifting incident at work. Dr. Langenbeck reiterated this opinion in correspondence dated October 20, 2023. However, he also signed a "Physician's Opinion Statement" on October 25, 2023, stating:

> It is my considered opinion that this patient did incur a work-related injury. . . . [Despite] significant pre-existing degenerative changes in her lumbar spine, . . . her work-related injury . . . was the percipitating [sic] event that primarily . . . aggravated her pre-existing condition thereby causing the need for the treatment that she received from me and the need for a second opinion by Dr. Silcox.

Upon receipt of Dr. Langenbeck's May 9, 2022 responses to its inquiry, Employer denied the claim. Employee filed a petition for benefit determination, and the parties proceeded with discovery. Ultimately, Employee obtained a medical evaluation with Dr. Stephen Dreskin in October 2023. Dr. Dreskin's diagnoses were consistent with those of the other providers, with the exception that he opined the bulges at L3-L4 and L5-S1 had progressed from bulges to "extruded discs" between the September 2021 MRI and the January 2022 myelogram. He then stated that "the herniations of L3-L4, L4-L5, and L5-S1 are all more than 50% primarily caused by [Employee's] work injury." He recommended future medical treatment to include "medical management of her chronic pain."

The parties deposed Dr. Langenbeck on February 26, 2024. He described the course of Employee's treatment and was questioned extensively regarding his responses to the questionnaires and other opinions he had expressed. In regard to his opinion on the pre-existing pathologies, Dr. Langenbeck testified as follows:

> [I]t was really based on some developments that came as a result of additional testing . . . that I did not have on that initial visit of July of '21. [L]ater on, a CT myelogram was obtained[,] and it showed some calcifications with some variations on the disc in her low back. Calcifications would have taken a long time to develop.

3

Dr. Langenbeck then explained that, in his opinion, the calcifications would have been present at least six months prior to the work injury, and although his initial belief was that there was an acute injury at L4-L5 based on the protrusion seen on the initial MRI, the revelation of the calcifications from the CT myelogram led him to believe the pathology was "more degenerative" than acute. He testified that, based on the diagnostic testing obtained to date, he could not say there were any acute changes primarily caused by the work incident of May 22, 2021. He then reiterated that Employee's low back condition was not primarily caused by the lifting incident but was more degenerative in nature.

Dr. Langenbeck further opined that Employee had reached maximum medical improvement as of March 29, 2022, the last date she treated in his office, stating:

> She has completed the whole scope of conservative care. You know, those aggravations, they oftentimes are -- can settle down within . . . six weeks, sometimes as long as three months. Universally, . . . three months is the duration of the inflammatory response.

Regarding future medical treatment, Dr. Langenbeck testified that while pain management might be helpful for her "accumulated" medical issues, it would not be "part" of her work-related injury.

The parties did not depose Dr. Dreskin in preparation for the expedited hearing. Instead, Employee elected to rely on Dr. Dreskin's written report.

At the expedited hearing on March 1, 2024, Employee was the only live witness. She testified that she had moved to Bowling Green, Kentucky and that she needed a panel of doctors for continued medical treatment. She admitted to having daily aches and pains before the incident at work but asserted that she had been in "severe pain" since that date.

Following the hearing, the trial court determined that Dr. Langenbeck's testimony was inconsistent but that Dr. Dreskin's written opinion was "straightforward" and "unwavering." Thus, the court found Dr. Dreskin's written opinion to be more persuasive than Dr. Langenbeck's testimony. It determined Employee was credible and that she had successfully rebutted the presumption of correctness afforded to Dr. Langenbeck's causation opinions. Finally, it found that Employee was likely to prevail at a hearing on the merits in proving her injury or aggravation of a pre-existing condition primarily arose out of her employment and ordered Employer to provide a panel of pain management physicians in Bowling Green, Kentucky. Employer has appealed.

## Standard of Review

The standard we apply in reviewing a trial court's decision presumes the court's factual findings are correct unless the preponderance of the evidence is otherwise. *See*

Tenn. Code Ann. § 50-6-239(c)(7) (2023). When the trial judge has had the opportunity to observe a witness's demeanor and to hear in-court testimony, we give considerable deference to factual findings made by the trial court. *Madden v. Holland Grp. of Tenn., Inc.*, 277 S.W.3d 896, 898 (Tenn. 2009). However, "[n]o similar deference need be afforded the trial court's findings based upon documentary evidence." *Goodman v. Schwarz Paper Co.*, No. W2016-02594-SC-R3-WC, 2018 Tenn. LEXIS 8, at *6 (Tenn. Workers' Comp. Panel Jan. 18, 2018). Similarly, the interpretation and application of statutes and regulations are questions of law that are reviewed *de novo* with no presumption of correctness afforded the trial court's conclusions. *See Mansell v. Bridgestone Firestone N. Am. Tire, LLC*, 417 S.W.3d 393, 399 (Tenn. 2013). We are also mindful of our obligation to construe the workers' compensation statutes "fairly, impartially, and in accordance with basic principles of statutory construction" and in a way that does not favor either the employee or the employer. Tenn. Code Ann. § 50-6-116 (2023).

## Analysis

Employer raises two central issues on appeal, which we restate as follows: (1) whether the trial court erred in determining Dr. Langenbeck's opinion on causation was successfully rebutted by a preponderance of the evidence, and (2) whether the trial court erred in awarding Employee a panel of pain management specialists in her new locale. Employee contends she met her burden of proof and that the order should be affirmed.[2]

### *Presumption of Correctness*

As the authorized physician selected from a panel, Dr. Langenbeck's opinion on causation is presumed correct, but that presumption can be rebutted by a preponderance of the evidence. Tenn. Code Ann. § 50-6-102(12)(E) (2023). The trial court determined that Dr. Langenbeck's opinion was inconsistent and, thus, found that Dr. Dreskin's opinion in his November 14, 2023 report rebutted the presumption afforded Dr. Langenbeck. As we have previously stated,

---

[2] At oral argument, Employee's counsel contended Employer's brief on appeal should not be considered because it did not comply with the Tennessee Rules of Appellate Procedure. By their own terms, however, the Tennessee Rules of Appellate Procedure apply to proceedings before the Supreme Court, the Court of Appeals, and the Court of Criminal Appeals. Tenn. R. App. P. 1 ("These rules shall govern procedure in proceedings before the Supreme Court, Court of Appeals, and Court of Criminal Appeals."). Therefore, we are not governed by these rules, although we may find them instructive. *Morgan v. Macy's*, No. 2016-08-0270, 2016 TN Wrk. Comp. App. Bd. LEXIS 39, at *25 (Tenn. Workers' Comp. App. Bd. Aug. 31, 2016) ("Although the Tennessee Rules of Appellate Procedure are not binding on us, they are persuasive authority and we may resort to them for guidance."); *Yarbrough v. Protective Services Co., Inc.*, No. 2015-08-0574, 2016 TN Wrk. Comp. App. Bd. LEXIS 3, at *12 (Tenn. Workers' Comp. App. Bd. Jan. 25, 2016) (The rules of appellate procedure, "while instructive, do not control the appellate process before this Board."). The briefing requirements for the Appeals Board are contained in the regulations governing the Board, and Employer's brief complied with those requirements. *See* Tenn. Comp. R. & Regs. 0800-02-22-.07 (2023).

a reviewing court can review documentary evidence, including expert depositions, *de novo* in order to determine where the preponderance of the evidence lies. However, with respect to the trial court's ultimate determination, a reviewing court should acknowledge the trial court's discretion to evaluate which expert's opinion is entitled to greater weight based on the totality of the evidence presented to the court and is to review such a determination under an abuse-of-discretion standard.

*Johnson v. Inspire Brands d/b/a Blazin Wings, Inc.*, No. 2020-08-0731, 2022 TN Wrk. Comp. App. Bd. LEXIS 35, at *18 (Tenn. Workers' Comp. App. Bd. Sept. 7, 2022). An abuse of discretion is found if the trial court "applied incorrect legal standards, reached an illogical conclusion, based its decision on a clearly erroneous assessment of the evidence, or employ[ed] reasoning that causes an injustice to the complaining party." *Konvalinka v. Chattanooga-Hamilton Cnty. Hosp. Auth.*, 249 S.W.3d 346, 358 (Tenn. 2008).

The trial court's order in this case indicates that Dr. Dreskin's opinion was "clear and unwavering." This assessment is based on a five-page medical report written after a single evaluation that occurred over two years after the work incident and nearly eighteen months after active treatment had ended. Dr. Dreskin provided no sworn testimony for the court's consideration, and his opinions were not subject to cross examination. Furthermore, the trial court's order does not contain any analysis of the qualifications or experience of each physician or of the relationship of each physician to Employee in determining that Dr. Dreskin's causation opinion was more persuasive.

On the other hand, Dr. Langenbeck explained why his causation opinion evolved over time and why the diagnostic test results led to that change. He explained that the CT myelogram obtained in January 2022 revealed degenerative calcifications that altered his opinion regarding the primary cause of Employee's back condition. Dr. Silcox, who saw Employee for a surgical consultation, confirmed Employee had a "significant" pre-existing condition. Dr. Dreskin did not discuss in his report any pre-existing pathology, and he provided no basis for his opinion that the calcified disc herniations were primarily caused by the reported work incident.[3]

---

[3] Dr. Dreskin identified the pathology seen on the January 2022 myelogram as "extrusions" at L4-L5 and L5-S1, indicating they had progressed from the bulges seen in the September 2021 MRI. He then referred to "herniations" at L3-L4, L4-L5, and L5-S1 in opining Employee's condition was primarily related to the work incident. However, Dr. Silcox referred to that same pathology as "bulges" in his report, and Dr. Langenbeck identified them as "protrusions" in his deposition. None of the physicians sought to clarify these inconsistent descriptions or explain what, in their respective opinions, differentiate disc bulges from extrusions, protrusions, or herniations. The only testimony pertinent to this issue was from Dr. Langenbeck, who opined that the presence of calcifications around the lumbar discs supported his opinion that the condition pre-existed the work accident. Dr. Dreskin's report is silent as to this issue.

Employee argues that Dr. Langenbeck's definition of an aggravation as stated in his deposition is inconsistent with Tennessee's Workers' Compensation Law.  As we have noted previously, however, medical professionals often use the terms "exacerbation" and "aggravation" interchangeably.  In *Miller v. Lowe's Home Centers, Inc.*, No. 2015-05-0158, 2015 TN Wrk. Comp. App. Bd. LEXIS 40 (Tenn. Workers' Comp. App. Bd. Oct. 21, 2015), we referenced the definition of those terms as stated in the American Medical Association's Guides to the Evaluation of Permanent Impairment ("AMA Guides"), which states:

> Although there are circumstances in which an event was the sole or primary cause of a given effect, in many instances patients have preexisting pathology that may have contributed to their clinical condition. Aggravation is a circumstance or event that permanently worsens a preexisting or underlying condition. The terms exacerbation, recurrence, or flare-up generally imply worsening of a condition temporarily, which subsequently returns to baseline.  Exacerbation does not equal aggravation.

*Id.* at *14 (quoting Am. Med. Ass'n, Guides to the Evaluation of Permanent Impairment 25 (6th ed. 2008)).  We also acknowledged in *Miller* that "there is nothing in the statute indicating that the general assembly relied on the definitions of the terms 'aggravation' and 'exacerbation' as discussed above."  *Id.* at *15.  Here, we conclude that although Dr. Langenbeck used the term "aggravation," his testimony described what the AMA Guides would classify as an exacerbation.  We further conclude that, although Dr. Langenbeck's causation opinion evolved over time, his testimony was not inconsistent and took into account additional objective information provided by diagnostic testing.

We have previously noted that a physician's failure to provide an opinion using "a rigid recitation of the statutory definition" does not in and of itself mean the physician's causation opinion is legally insufficient.  *Panzarella v. Amazon.com, Inc.*, No. 2015-01-0383, 2017 TN Wrk. Comp. App. Bd. LEXIS 30, at *14 (Tenn. Workers' Comp. App. Bd. May 15, 2017).  In the present case, when the written opinion of Dr. Dreskin is compared to the testimony of Dr. Langenbeck, we conclude the trial court abused its discretion in determining that Employee had rebutted the presumption of correctness attributable to Dr. Langenbeck's causation opinion.  Accordingly, we conclude the trial court erred in accepting Dr. Dreskin's causation opinion over that of the authorized treating physician at this stage of the case.

*Panel of Physicians*

Having determined that Employee's proof did not rebut the presumption of correctness accorded Dr. Langenbeck's causation opinion, we must still consider whether Employee is entitled to a panel of physicians in her new locale. Tennessee Code Annotated section 50-6-204(a)(3)(F) provides:

7

In all cases when an employee changes the employee's community of residence after selection of a physician under this subdivision (a)(3), the employer *shall* provide the employee, upon written request, a new panel of reputable physicians . . . from which the injured employee shall select one (1) to be the treating physician.

(Emphasis added.) When the term "shall" is used in a statute, "it is ordinarily construed as being mandatory and not discretionary." *Myers v. Amisub (SFH), Inc.*, 382 S.W.3d 300, 308 (Tenn. 2012).

As we have noted previously, at an expedited hearing, "an employee need not prove each and every element of his or her claim by a preponderance of the evidence . . . to be entitled to [benefits] but must instead present evidence sufficient for the trial court to conclude that the employee would likely prevail at a hearing on the merits." *McCord v. Advantage Human Resourcing*, No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *9 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015). Furthermore, "an aggravation or exacerbation need not be permanent for an injured worker to qualify for medical treatment reasonably necessitated by the aggravation." *Miller*, 2015 TN Wrk. Comp. App. Bd. LEXIS 40, at *18. Here, the trial court determined Employee was credible in describing how the incident occurred, and the authorized treating physician stated that the treatment he had provided was medically necessary in light of the worsening of her condition that arose primarily from the incident at work. As such, based on the evidence presented to date, we do not find any error in the trial court's determination that Employee is likely to prove she suffered a compensable accident that entitled her to certain benefits under the Workers' Compensation Law, including a panel of physicians. As Employee has moved to a new community, she is entitled to a new panel of physicians for any medically necessary treatment causally related to the work accident pursuant to Tennessee Code Annotated section 50-6-204(a)(3)(F).

We do not, however, find any indication in the record that Employee has established entitlement to a panel of pain management specialists to treat any condition primarily caused by the work accident.[4] Dr. Langenbeck opined that the need for pain management treatment is not causally related to the work accident, and his opinion is entitled to a presumption of correctness. Dr. Dreskin, in his written report, did not offer an opinion that the need for pain management treatment arose primarily from the work accident. In fact, Dr. Dreskin merely stated, "I recommend medical management of the patient's chronic pain," without offering any causative connection between her chronic pain and the work accident. He then opined that "the patient has reached maximum medical improvement from a pain management standpoint." We therefore modify the trial court's order to require

---

[4] There is no referral for pain management treatment from any authorized treating physician contained in the technical record. Dr. Dreskin acknowledged in his report that Employee was sent to him for an independent medical evaluation, not for treatment.

Employer to provide a general panel of physicians in her geographic area for treatment of Employee's injuries that are causally related to her work accident pursuant to Tennessee Code Annotated section 50-6-204(a)(3)(A)(i).

## Conclusion

For the foregoing reasons, we reverse the trial court's finding that the presumption of correctness afforded to Dr. Langenbeck's causation opinion was successfully rebutted. We affirm as modified the trial court's order requiring Employer to provide a panel of physicians, and we remand the case. Costs on appeal are taxed to Employer.



## TENNESSEE BUREAU OF WORKERS' COMPENSATION
## WORKERS' COMPENSATION APPEALS BOARD

| | | |
|---|---|---|
| Theralease Ridley | ) | Docket No. 2022-01-0478 |
| | ) | |
| v. | ) | State File No. 47802-2021 |
| | ) | |
| Mature Care of Standifer Place, LLC, et al. | ) | |
| | ) | |
| | ) | |
| Appeal from the Court of Workers' | ) | Heard June 13, 2024, |
| Compensation Claims | ) | in Murfreesboro, TN |
| Audrey A. Headrick, Judge | ) | |

### CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Appeals Board's decision in the referenced case was sent to the following recipients by the following methods of service on this the 9th day of July, 2024.

| Name | Certified Mail | First Class Mail | Via Fax | Via Email | Sent to: |
|---|---|---|---|---|---|
| Connor R. Sestak<br>Nicholas Akins | | | | X | csestak@morganakins.com<br>nakins@morganakins.com<br>plunny@morganakins.com |
| Michael A. Wagner | | | | X | maw@wagnerinjury.com |
| Audrey A. Headrick, Judge | | | | X | Via Electronic Mail |
| Kenneth M. Switzer, Chief Judge | | | | X | Via Electronic Mail |
| Penny Shrum, Clerk, Court of Workers' Compensation Claims | | | | X | penny.patterson-shrum@tn.gov |

Matthew Keene
Acting Clerk, Workers' Compensation Appeals Board
220 French Landing Dr., Ste. 1-B
Nashville, TN 37243
Telephone: 615-532-1564
Electronic Mail: WCAppeals.Clerk@tn.gov